```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    FOR ONLINE PUBLICATION ONLY
----------------------------------------------------------------- X
RICHARD BONNER,                                  :
                                                 :
                              Petitioner,        :
                                                 :          MEMORANDUM
             - against -                         :          AND ORDER
                                                 :
JOSEPH T. SMITH, Warden,                         :          05 CV 4209 (JG)
                                                 :
                              Respondent.        :
----------------------------------------------------------------- X
```

A P P E A R A N C E S :

    RICHARD BONNER
        Inmate Number 98A5367
        Shawangunk Correctional Facility
        P.O. Box 700
        Walkill, New York  12589
        Petitioner *Pro se*

    CHARLES J. HYNES
        District Attorney
        Kings County
    By:   Leonard Joblove
        Solomon Neubort
        Marie-Claude P. Wrenn
        Assistant District Attorneys
            of Counsel
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Richard Bonner petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Bonner is serving a total sentence of 75 years in prison pursuant to the judgment of the New York Supreme Court, Kings County, entered after a jury found him guilty of attempted murder in the second degree, three counts of assault in the first degree, criminal possession of a weapon in the second degree, and reckless endangerment in the first degree. Bonner contends (1) the

prosecution adduced insufficient evidence to support his convictions for attempted murder and first degree assault, and (2) his sentence violates the Sixth Amendment right to trial by jury. Oral argument was held on the petition on January 13, 2006. Bonner argued his case by telephone from the prison in which he is incarcerated. For the reasons set forth below, I grant the petition in part. Specifically, the case is remanded with instructions to vacate Bonner's convictions for first degree assault as to David Foster and Joseph Battle and to reduce Bonner's sentence accordingly from a total of 75 years to 25 years.

BACKGROUND

The evidence at trial, viewed in the light most favorable to the prosecution, established the following. On April 29, 1997, at approximately 6:00 p.m., Vonya Davis and Elizabeth Martin got into an argument on the street in front of 1102 President Street, between Bedford and Rogers Avenues in Crown Heights, Brooklyn. According to Martin, Davis took offense that Martin spoke to her on the block only occasionally, sometimes failing to acknowledge Davis's presence altogether. Tr. 651.[1] Tramone Lipford was nearby, and he initially advised Davis to ignore Martin. Lipford eventually became involved in the argument as well, however, and after he and Martin cursed threateningly at each other, Martin said she was going upstairs to call her baby's father, the petitioner Richard Bonner.

Bonner arrived around 8:00 p.m., accompanied by several other men who were strangers to the neighborhood. Bonner entered 1102 President Street and moments later emerged with Martin. Lipford and Davis were just then returning to the block from a nearby store, and Bonner approached Lipford directly. Bonner accused Lipford of failing to pay him proper

---

[1] "Tr." refers to the pagination in the trial transcript.

respect and suggested that if Martin and Davis had a disagreement, then they should fight each other. Martin and Davis then resumed their altercation, this time getting physical, and as a crowd gathered to watch the scuffle, Martin yelled out that she had been cut. Bonner quickly moved to break up the fight, and when he got the two women apart, he turned around and punched Lipford in the face, knocking him to the ground. Bonner stepped back and drew a gun from his belt. While Lipford was still on the ground, Bonner shot him several times in the mid-section. At least two of the strangers who accompanied Bonner opened fire as well, hitting two bystanders, David Foster and Joseph Battle, each in the leg.

The testimony of two eyewitnesses was critical to the prosecution's case. First, Gardenia Robinson testified she saw Bonner punch someone and then "step back, pull a gun out and shoot someone." Tr. 240. Robinson testified she could see the gun clearly and that Bonner shot five or six times, with the gun pointed downward." Tr. 241. On cross-examination, however, when Bonner's counsel asked: "But you did see Mr. Bonner step back and pull a gun and shoot, you saw that?" Robinson answered "No." Tr. 295. The prosecutor sought to clear up the matter on redirect examination:

> Q: Ms. Robinson, did you see the defendant pull a gun out of his pants?
>
> A: Yes.
>
> Q: Did you see him fire that gun?
>
> A: Yes.

Tr. 295. When Bonner's counsel protested on recross, "Ms. Robinson, ... I asked you did you see Mr. Bonner step back, pull a gun and shot and I thought I heard you say no?" Tr. 296, Robinson replied, "You didn't ask me that." *Id*.

3

The prosecution's second eyewitness was David Foster, who testified that he saw Bonner punch Lipford, and that "[a]s soon as he punched Tramone [Lipford] .... [t]hat's when he pulled his gun out." Tr. 317. Foster testified he had a clear view of the gun, and that Bonner "started shooting ... [at] Tramone .... [a] lot of times." *Id*. "When he started shooting," Foster told the jury, "his friends started shooting," firing in a "sweeping motion" toward the crowd. *Id*. at 317-18.

Foster and Joseph Battle were hit by the spray of bullets, and the details of the injuries they sustained are of primary importance here. Foster testified he was shot twice, once in the left thigh and again in the lower right leg, which disabled him from running from the scene. He was treated and kept at the Kings County Hospital "[f]or a good while." Tr. 319. One of the bullets was removed that night; one was removed later. Foster testified that he was in pain at the time of his injuries, and that he "couldn't walk." Tr. 320. When asked, "How do you feel today?" he responded, "I feel all right. It bothers me when the weather change." Tr. 320. Dr. Brian Gilcrest, the treating physician in charge that night, characterized Foster's treatment as follows:

> [T]his wasn't a very serious sort of procedure or problem .... The resident team took care of this typical triage situation .... We treat[ed] the wounds with local care .... [T]he bad tissue which has been injured is cleaned up and you put on dry, sterile dressings so that you get a good result. Standard care, straightforward and local. Not a big procedure.

Tr. 530-31.[2]

---

[2] Although the prosecutor made reference to Foster's medical records in his direct exam of Dr. Gilcrest, they are not part of the record in this habeas proceeding. The same is true for Battle's medical records. The prosecution does not rely upon those records in defense of Bonner's convictions, except to point out that Battle was prescribed pain medication, given crutches, and instructed to refrain from putting weight on his injured leg for a time. Mem. of Resp. at 11.

Joseph Battle testified that he was shot in his right leg, yet he was still able to run from the scene. Tr. 459-460. He was treated at Kings County Hospital, staying "just overnight .... They just -- cleaned it and left the fragment in my leg." Tr. 460. When asked if he was in pain at the time he was shot, Battle replied, "Not really, but when they started cleaning it out I was in pain. But I didn't even know I was shot [at first]." Tr. 460-61. Battle added that as a result of his gunshot wound, he "can't play basketball much. If I play basketball, when I finish playing my leg starts to hurt. And like when it rains and stuff, my leg be hurting too." Tr. 461. Dr. Gilcrest testified that Battle's treatment was "the same as Mr. Foster's." Tr. 534.

The jury found Bonner guilty of attempted murder in the second degree and assault in the first degree as to Lipford, and of assault in the first degree as to both Foster and Battle by acting in concert with the other shooters. For each of the three victims, Bonner received a determinate sentence of 25 years' imprisonment, to run consecutively. Bonner was also convicted of criminal possession of a weapon and of reckless endangerment, for which he received shorter, concurrent sentences.

Bonner raised substantially the same claims presented here on direct appeal, and the Appellate Division affirmed his convictions. *People v. Bonner*, 772 N.Y.S.2d 598 (2004). Specifically, the Appellate Division held that the evidence against Bonner was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt," and that "the verdict of guilt was not against the weight of the evidence." *Id*. at 598-99. The Appellate Division further concluded that "[c]ontrary to the defendant's contention, the fact that the sentence imposed was greater than that offered during plea negotiations does not establish that the defendant was punished for exercising his right to proceed to trial." *Id*. at 599. The New York Court of Appeals denied

5

review. *People v. Bonner*, 3 N.Y.3d 637 (2004). Bonner did not seek direct review in the United States Supreme Court, nor did he seek collateral review in the courts of New York. He timely petitioned this court for a writ of habeas corpus on August 19, 2005.

DISCUSSION

In his petition, Bonner argues (1) the evidence against him was insufficient to support his convictions under the Due Process Clause of the Fourteenth Amendment, and (2) his sentence of 75 years constituted punishment for his exercise of the right to trial by jury in violation of the Sixth Amendment.

A. Sufficiency of the Evidence Claims

Two levels of deference apply to Bonner's claims that the evidence against him was insufficient, the first owed to the jury, the second to the courts of New York. First, the substantive constitutional standard is found in *Jackson v. Virginia*: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). As the Supreme Court explained:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Id*.

Second, when an insufficiency claim has been "adjudicated on the merits in State

court proceedings" and rejected, the Antiterrorism and Effective Death Penalty Act of 1996 requires a federal court on habeas review to defer to that "legal conclusion," *Jackson*, 443 U.S. at 319, unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Ponnapula v. Spitzer*, 295 F.3d 172, 180 (2d Cir. 2002) (rejecting sufficiency claim on habeas review by stating: "petitioner has failed to demonstrate that the state court's finding of sufficient evidence of his intent to commit larceny amounted to an unreasonable application of clearly established federal law as required by 28 U.S.C. § 2254(d)(1)."); *Bruce v. Terhune*, 376 F.3d 950, 959 (9th Cir. 2004) (O'Scannlain, J., concurring) ("AEDPA requires us to evaluate state courts' applications of *Jackson* for objective unreasonableness.").

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*. "In other words, a federal court may grant relief when a state

7

court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotation marks omitted).

The Appellate Division identified the correct legal standard applicable to Bonner's claims of insufficient evidence, citing to *People v. Contes*, 60 N.Y. 2d 620 (1983), which in turn articulates the *Jackson* standard. *Id*. at 621. The question for review, then, is whether the Appellate Division unreasonably applied *Jackson* in Bonner's case. Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, however, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (citing *Francis S. v. Stone*, 221 F .3d 100, 111 (2d Cir.2000)).

### 1. *The Attempted Murder Count*

Bonner argues the eyewitness testimony of Gardenia Robinson and David Foster was not credible; Robinson's because she equivocated on cross-examination and Foster's because he is a convicted felon. This argument is a non-starter, as the Second Circuit has repeatedly held that reviewing courts must "resolve all issues of credibility in favor of the prosecution." *United States v. Khan*, 787 F.2d 28, 34 (2d Cir. 1986). Even one witness's direct

testimony to a particular fact provides sufficient evidence of that fact. *See United States v. Jesperson*, 65 F.3d 993, 998 (2d Cir. 1995) ("No more need be said than that [the prosecution's witness] so testified, and that we are required to resolve any issue regarding his credibility in the government's favor.").

Under New York law, a person is guilty of intentional second-degree murder when, "with intent to cause the death of another person, he causes the death of such person or a third person." N.Y. Penal Law § 125.25(1). A person is guilty of attempting a crime when, "with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00. Both Foster and Robinson testified they saw Bonner pull the gun from his waist, point it downward, and fire multiple shots. Foster testified he could see clearly that Bonner pointed the gun straight at Lipford, who was still on the ground. I agree with the Appellate Division's decision that the jury was free to accept that testimony as true, and reasonably to infer from it that Bonner, by shooting Lipford multiple times, intended and attempted to cause his death. Neither Foster's status as a convicted felon nor Robinson's apparent confusion on cross-examination provide grounds upon which to upset the jury's unanimous decision to credit their testimony.

### 2. *First Degree Assault of Foster and Battle*

Bonner argues the prosecution adduced insufficient evidence to prove the injuries sustained by Foster and Battle constituted "serious physical injury" as defined in N.Y. Penal Law § 10.00(10), and here he gains traction. Under New York law, a person is guilty of assault in the first degree when, "[1] under circumstances evincing a depraved indifference to human life, [2] he recklessly engages in conduct which creates a grave risk of death to another person, and [3]

9

thereby causes serious physical injury to another person." N.Y. Penal Law § 120.10(3). "Serious physical injury" means "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10).

Presumably because "serious physical injury" is defined as including a "physical injury which creates a substantial risk of death," the prosecution points out the testimony of Dr. Gilcrest that Foster and Battle were lucky they "didn't sustain injury to [the] large blood vessels" in their legs. Tr. 532; *see also* Respondent's Mem. of Law at 12 ("[I]t was completely fortuitous that the gunshots had not pierced the large blood vessels in both victims' legs."). This suggestion conflates the second element of the crime (engaging in "conduct which creates a grave risk of death to another person") with the third ("caus[ing] serious physical injury to another person"). Dr. Gilcrest's testimony supports the second element, tending to show that the conduct in which Bonner's accomplices engaged, shooting Foster and Battle in the legs, created a grave risk that one of them would die. But the third element of the crime requires proof that the injuries Foster and Battle actually sustained -- as opposed to the injuries they narrowly missed -- constituted "serious physical injury" under the statutory definition. Thus, a "physical injury which creates a substantial risk of death" under the third element means an injury from which there was a substantial risk, evaluated after its infliction, that the victim would perish as a result. *See People v. Rucker*, 464 N.Y.S.2d 73 (4th Dep't 1983) ("[T]he statute requires not that such disfigurement could result, but that it actually did result."). No one argues the injuries Foster and Battle sustained created such a risk.

The trial court apparently believed that a gunshot wound could automatically

10

constitute sufficient evidence to prove a "serious physical injury." Tr. at 763 ("These people were shot. Serious physical injury can be construed as sufficient by the jury. I will charge as a matter of law it can be construed as such by virtue of being shot because a gunshot wound is a serious thing, so I will allow it to go to the jury."). This was error. *See People v. Horton*, 780 N.Y.S.2d 654 (3d Dep't 2004) (victim shot in neck insufficient, despite fact that bullet fragments remained inside the victim; "[n]o medical evidence was offered concerning the health effects of leaving the fragments in place"); *People v. Bodford*, 638 N.Y.S.2d 259 (4th Dep't 1996) (gunshot wound to the foot insufficient), *vacated on other grounds*, 643 N.Y.S.2d 444 (4th Dep't 1996); *People v. Santos*, 556 N.Y.S.2d 376 (2d Dep't 1990) ("gunshot wound to the leg" held insufficient); *People v. Matos*, 484 N.Y.S.2d 844 (2d Dep't 1985) (gunshot wound to the leg insufficient when victim did not testify and "record of his three-day hospitalization ... failed to establish" serious physical injury). Indeed, the mere fact that an injury was by gunshot, without more, is insufficient to establish the lesser standard of "physical injury" under Penal Law § 10.00(9). *See People v. Rojas*, 61 N.Y.2d 726 (1984).

The Appellate Division did not specifically ratify this error, however, and I will not presume it harbored such a misconception. It remains to be determined, therefore, whether the Appellate Division could have reasonably concluded the prosecution adduced sufficient evidence to prove beyond a reasonable doubt that Foster and Battle suffered "protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10).

Foster testified that he could not walk at the time he was shot, but that by the time of trial he "felt alright." Tr. 320. Such short-lived impairments have consistently been held to

11

fall short of the required showing. *See People v. Phillip*, 718 N.Y.S.2d 727 (3d Dep't 2001) (evidence that victim suffered fractured jaw, missed "six or eight weeks of work, and during the two-month period following the injury he 'couldn't eat any type of solid food [and] basically couldn't talk'" held insufficient, despite fact that even at the time of trial, "two years following the injury," victim still had pain in his jaw "if he bites certain foods"); *Horton*, 780 N.Y.S.2d 654 (evidence that victim "was discharged from the hospital after two days and prescribed pain medication for a chipped tooth and cut lip" held insufficient); *People v. Robles*, 569 N.Y.S.2d 704 (1st Dep't 1991) (evidence that victim "suffered two stab wounds, one at the base of the neck and one in the right shoulder" requiring "irrigation and suturing and overnight observation in the hospital" and that victim had "some trouble eating" and "stayed home from work for several weeks because he had difficulty walking" held insufficient).

The only lingering complaint Foster registered was that "[i]t bothers me when the weather change." Tr. 320. Battle cited the same weather-induced discomfort. The Second Department rejected the argument that such a "bother[]" could constitute serious physical harm in *People v. Castillo*, 604 N.Y.S.2d 220 (1993):

> As a result of the defendants' attack, the complainant suffered two stab wounds which required suturing. The complainant was treated and released from the hospital and was absent from work for the next two weeks. At trial, approximately 18 months after the attack, when asked whether he suffered any physical effects from the injuries which he had sustained, the complainant replied, "It hurts once in a while when the weather changes." Viewing this evidence in the light most favorable to the People ... , we hold that the People did not produce sufficient evidence to establish that the complainant suffered either a "substantial risk of death" or "protracted impairment of health" within the meaning of Penal Law § 10.00(10).

*Id*. With respect to Foster, the record is simply devoid of anything else to consider regarding the

extent of his injuries, except the expert medical testimony of Dr. Gilcrest that "this wasn't a very serious sort of procedure or problem." Tr. 530.  I am unable to discern "any valid line of reasoning and permissible inferences" that could lead a jury from what Dr. Gilcrest said -- Foster's injuries and treatment were not very serious -- to the opposite of what Dr. Gilcrest said -- Foster's injuries were in fact serious.  *People v. Bleakley*, 69 N.Y.2d 490 (1983).

Battle added only one more symptom:  that he "can't play basketball much.  If I play basketball, when I finish playing my leg starts to hurt." Tr. 461.  As the respondent points out, the Appellate Division has, on one occasion, cited continuing "discomfort when playing basketball" as one factor among several that contributed to a sufficient showing of "serious physical injury." *People v. Beatty*, 521 N.Y.S.2d 500 (2d Dep't 1987).  But the evidentiary showing in that case also included "a fracture of the lamina [, and] ... a bullet fragment lodged perilously close to [the victim's] spine, thus precluding surgery due to the risk of paralysis." *Id*. The victim was also "restricted by his doctors from playing contact sports and engaging in strenuous activities as a result of the gunshot wound." *Id*.  The fact of a fractured back puts a great deal of distance between the evidence in *Beatty* and Battle's testimony that he "didn't even know [he] was shot" and that he did not experience any pain until the doctors began to clean his wound.  Tr. 460-61.  Indeed, there appears to be some authority for the proposition that major fractures alone can constitute sufficient evidence of "serious physical injury." *See People v. Salisbury*, 407 N.Y.S.2d 263 (3d Dep't 1978) ("It would seem, as a matter of law, that the fractures as described without considering [the other evidence] constituted serious physical injuries.").  There was, of course, no proof of a fracture in this case, nor any other evidence tending to show Battle's injuries were severe, save his complaints that his leg hurt "when [he]

finish[ed] playing" basketball and "when it rains." Tr. 461.

I conclude the prosecution adduced legally insufficient evidence to prove that Foster and Battle sustained "serious physical injury" within the meaning of New York Penal Law § 10.00(10), an essential element of the crime of assault in the first degree, New York Penal Law § 120.10(3). I further conclude that the Appellate Division's misapplication of the standard in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), was unreasonable under 28 U.S.C. § 2254(d)(1). Therefore, I grant the writ as to Bonner's convictions for first degree assault of Foster and Battle.

I note that this conclusion does not upset Bonner's conviction for reckless endangerment in the first degree under New York Penal Law §120.25, which provides: "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." Reckless endangerment in the first degree is thus identical to assault in the first degree but without the element of "caus[ing] serious physical injury to another person," precisely the element the prosecution failed to prove.

Although Bonner claims there was insufficient evidence to prove he acted in concert under New York Penal Law § 20.00 with the strangers who shot Foster and Battle, I reject this contention as without merit. Section 20.00 provides: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." David Foster testified that when Bonner pulled out his gun and started shooting, the strangers who had accompanied him to the scene, all armed with guns, also started firing. *See* Tr. 317. It was

14

reasonable for the jury to infer from that evidence that these men came to the scene with Bonner at his request for the purpose of backing him up in a fight, and that they had agreed with Bonner beforehand to use their guns to do so. That is all that need be proved for Bonner to be liable for his cohorts' reckless endangerment.

B.  Bonner's Sentencing Claim[3]

Bonner argues that his several sentences, totaling 75 years, were imposed in retribution for his exercising his right to a trial by jury, noting that before trial the prosecution offered him a total sentence of only seven years if he would plead guilty. *See* Mem. of Pet. at 22, citing *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), and *Blackledge v. Perry*, 417 U.S. 21 (1974). Bonner's claim points out well the grim alternatives facing a defendant at the plea bargaining table, but it does not state a constitutional violation. As the Supreme Court has explained:

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable -- and permissible -- attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Corbitt v. New Jersey*, 439 U.S. 212, 220-21 (1978) (internal citations and quotation marks omitted). Indeed, "[t]he criminal process, like the rest of the legal system, is replete with

---

[3] Bonner's original petition asserted an unexhausted claim that his sentence violated the Eighth Amendment guarantee against cruel and unusual punishment. Because Bonner did not advance any good cause for having failed to present this claim to the courts of New York, I concluded that a stay and abeyance under *Rhines v. Weber*, 125 S.Ct. 1528 (2005), was unwarranted. Accordingly, by telephone conference on February 24, 2006, I advised Bonner of his option "to delete the unexhausted claim[] and to proceed with the exhausted claims," *id*. at 1535, and he elected to do so.

15

situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McGautha v. California*, 402 U.S. 183, 213 (1971). Bonner's claim that his sentence unduly burdened the exercise of his Sixth Amendment right to trial by jury is accordingly denied.

CONCLUSION

For the reasons set forth above, I grant the writ in part. The case is remanded to the New York Supreme Court, County of Kings, with instructions to vacate Bonner's convictions for first degree assault as to David Foster and Joseph Battle, and to reduce Bonner's sentence accordingly from a total of 75 years to 25 years. I have reviewed Bonner's other claims, and I find them to be without merit.

*So ordered*.

Dated:     Brooklyn, New York
           February 24, 2006